## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ARISTORS LICENSING LLC,

        Plaintiff,

   v.

RAVE MOBILE SAFETY HOLDINGS, LLC

        Defendant.

C.A. No. 20-147-MN

**JURY TRIAL DEMANDED**

## RAVE MOBILE SAFETY HOLDINGS, LLC'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Jeremy D. Anderson (#4515)
222 Delaware Ave., 17th Floor
P.O. Box 1114
Wilmington, DE 19801
(302) 652-5070 (Telephone)
(302) 652-0607 (Facsimile)
janderson@fr.com

Neil J. McNabnay
Ricardo J. Bonilla
Noel F. Chakkalakal
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
mcnabnay@fr.com
rbonilla@fr.com
chakkalakal@fr.com

*Attorneys for Defendant*
*Rave Mobile Safety Holdings, LLC*

Dated:  February 24, 2020

## <u>TABLE OF CONTENTS</u>

I.   NATURE AND STAGE OF PROCEEDINGS ...................................................................... 1

II.  SUMMARY OF THE ARGUMENT .................................................................................. 1

III. STATEMENT OF FACTS ................................................................................................. 2

IV.  ARGUMENT ...................................................................................................................... 4

      A.   Legal Standards.......................................................................................................4

          1.   This case should be dismissed through Rule 12(b)(6). ...............................4

          2.   The law of 35 U.S.C. § 101. .....................................................................5

      B.   The Asserted Patent is Invalid under 35 U.S.C. § 101 ...........................................8

          1.   *Alice* Step 1: The Asserted Patent is directed to the abstract idea of providing alarm notifications. .....................................................................8

          2.   *Alice* Step 2: The Asserted Patents do not contain an inventive concept sufficient to confer patent eligibility. ...........................................12

V.   CONCLUSION.................................................................................................................. 16

## TABLE OF AUTHORITIES

**Cases**                                                         **Page(s)**

" *BASCOM Global Internet Services, Inc. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016)..........................................................................................7

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*,
    838 F.3d 1253 (Fed. Cir. 2016)..............................................................................7, 12, 14

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014)...............................................1, 5, 6, 7, 8, 11, 12, 13, 14, 16

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
    841 F.3d 1288 (Fed. Cir. 2016)........................................................................................15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................................................4

*Audatex N. Am., Inc. v. Mitchell Int'l, Inc.*,
    703 F. App'x 986 (Fed. Cir. 2017) .....................................................................................8

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*,
    687 F.3d 1266 (Fed. Cir. 2012)....................................................................................4, 11

*In re: Bill of Lading Transmission & Processing Sys. Patent Litig.*,
    No. 1:09-MD-2050, 2016 WL 4505767 (S.D. Ohio Aug. 29, 2016)...................................16

*Bilski v. Kappos*,
    561 U.S. 593 (2010)...................................................................................................4, 5, 8

*BSG Tech LLC v. AutoZone, Inc.*,
    No. 2:16-CV-529, 2017 WL 2609066 (E.D. Tex. Mar. 30, 2017) .........................................11

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014)...........................................................................6, 8, 9, 11

*Cuvillier v. Sullivan*,
    503 F.3d 397 (5th Cir. 2007) .............................................................................................4

*Diamond v. Chakrabarty*,
    447 U.S. 303 (1980)...........................................................................................................5

*Electric Power Group LLC v. Alston S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016)...................................................................................5, 6, 9, 13

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016)...................................................................................5, 11, 12

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
    839 F.3d 1089 (Fed. Cir. 2016)...................................................................7, 10, 11

*Gottschalk v. Benson*,
    409 U.S. 63 (1972)...............................................................................................5

*Intellectual Ventures I LLC v. Capital One Bank*,
    792 F.3d 1363 (Fed. Cir. 2015)........................................................8, 13, 14

*Intellectual Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016)...........................................................................13

*Internet Patents Corp. v. Active Network, Inc.*,
    790 F.3d 1343 (Fed. Cir. 2015)............................................................................5

*Mortg. Grader, Inc. v. First Choice Loan Servs., Inc.*,
    811 F.3d 1314 (Fed. Cir. 2016)......................................................................6, 11

*MySpace, Inc. v. GraphOn Corp.*,
    672 F.3d 1250 (Fed. Cir. 2012)...........................................................................13

*Personalized Media Commc'ns, LLC v. Amazon.com, Inc.*,
    161 F. Supp. 3d 325 (D. Del. 2015) (Andrews, J.) .................................14

*SAP America, Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018)............................................................................9

*Secured Mail Solutions LLC v. Universal Wilde, Inc.*,
    873 F.3d 905 (Fed. Cir. 2017)..........................................................................6, 9

*SkillSurvey, Inc. v. Checkster LLC*,
    178 F. Supp. 3d 247 (E.D. Pa. 2016), *aff'd*, 683 F. App'x 930 (Fed. Cir. 2017) ...................15

*Smart Sys. Innovations, LLC v. Chicago Transit Authority*,
    873 F.3d 1364 (Fed. Cir. 2017).......................................................................6, 9

*Smart Sys. Innovations, LLC v. Chicago Transit Authority.*,
    No. 14-cv 08053, 2015 WL 4184486 (N.D. Ill. July 10, 2015)...........................15

*Synopsis, Inc. v. Mentor Graphics Corp.*,
    839 F.3d 1138 (Fed. Cir. 2016)...........................................................................15

*In re TLI Communications LLC Patent Litigation*,
    823 F.3d 607 (Fed. Cir. 2016)...............................................................1, 7, 10, 13, 14

*Two-Way Media Ltd. v. Comcast Cable Comm'cns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017)........................................................................7, 10

*Ultramercial, Inc. v. Hulu, LLC,*
    772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring)..................................................4, 13, 15

*Victaulic Co. v. Tieman,*
    499 F.3d 734 (3rd Cir. 2007) ...........................................................................................................4

*Visual Memory LLC v. NVIDIA Corp.,*
    867 F.3d ...............................................................................................................................................12

## I.   NATURE AND STAGE OF PROCEEDINGS

On January 30, 2020, Plaintiff Aristors Licensing LLC ("Aristors") filed this lawsuit accusing Defendant Rave Mobile Safety Holdings, LLC  ("Rave") of infringing U.S. Patent Nos. 8,013,734 (the "'734 Patent" or the "Asserted Patent"),  entitled "Personal safety mobile notification system." Aristors accuses Rave's Mobile Safety Business Solutions of infringing at least Claim 1 of the '734 Patent (the "Asserted Claims") by sending alerts. (D.I. 1 at ¶¶ 13–31.)

## II.  SUMMARY OF THE ARGUMENT

This case should be dismissed because the Asserted Patent is directed to the abstract idea of sending alerts. The physical components recited in the claims "merely provide a generic environment in which to carry out the abstract idea of" sending alerts. *In re TLI Communications LLC Patent Litigation,* 823 F.3d 607, 611 (Fed. Cir. 2016) (holding these types of claims patent ineligible).  The Asserted Patent claims activating, transmitting, confirming, notifying, and transmitting an alert or indication of an alert using generic hardware components arranged in a conventional way using well-known functions. Thus, the Asserted Claims recite only functional results without describing any particular improvement in functionality for achieving those results and thus fail step one of the *Alice* test.

The Asserted Patent also fails step two, because it does not contain any inventive concept, much less a specific method for implementing such a concept. The patent makes clear that the concept of sending mass alerts was well known. *See*, e.g., '734 Patent at 6:43–7:16. And the alleged invention is implemented using generic equipment or components—"mobile device," "communication network control system, and "alarm devices"—performing standard functions. "[T]he recited physical components merely provide a generic environment in which to carry out the abstract idea of" sending alerts. TLI Communications LLC v. AV Automotive, L.L.C., 823

F.3d 607, 611 (Fed. Cir. 2016) (quotations and citation omitted). The Asserted Claims should therefore be invalidated for failure to claim eligible subject matter under 35 U.S.C. § 101.

## III.    STATEMENT OF FACTS

The Asserted Patent is directed to the abstract idea of sending alerts, and does not contain patent-eligible subject matter.

The purported inventions of the Asserted Patent relates to methods and systems for alarm notification. '734 Patent at 8:5–15. At a basic level, an alert mode of a mobile device is activated and then an indicator of an emergency situation alert is transmitted to a communication network control system. Id. at 8:6–9. The communication network control system confirms the indication of the emergency situation back to the mobile device and notifies emergency personnel accordingly. The communication network control system then transmits the indication to one or more additional mobile devices in the area. Id. at 8:12–15.

The alleged invention is implemented on generic components arranged in a conventional manner. Only a "mobile device," "communication network control system," and "alarm devices" are required. *Id.* at 2:58–3:14, FIG. 1. The "mobile device" responsible for providing the alert to a communication network can be a standard cell phone, without any indication of specialized hardware. *Id.* at 9:55–64. No description is given of a communication network control system, and therefore no specialized hardware or software is indicated as part of the system. *See generally id.*

The Asserted Patent does not disclose any inventive way of providing alarm notification. The patentees admit that broadcasting emergency notifications via SMS was known. Furthermore, they admit that "[m]ass notification text messaging companies include: Omnilert, Extreme Alert, and Codered Emergency Communication Network. These mass communication providers have systems which are viable means of communicating an emergency event to a selected group of authorized subscribers. These subscribers view the mass broadcasts through cellular and mobile

device networks, personal computers, laptop computers, personal digital assistant devices and other communication devices. However, these companies do not provide actual time alert Systems that will help prevent the loss of life or property when facing a gunman, terrorist, potential rape and other victims of violent crime." *Id*. at 7:3–14.

The patentees allege that "[c]urrent warning and alert systems do not warn others (e.g., non-subscribers) of current real-time events based on "live' situations, real-time occurrences and other situations." *Id*. at 7:14–16.  FIG. 1 is a graphic representing an overall communication stream amongst exemplary computer systems and communication devices according to one embodiment of the present invention:



Fig. 1

*Id.* at Figure 1. As seen above, no specialized equipment is described.

## IV. ARGUMENT

### A. Legal Standards

#### 1. This case should be dismissed through Rule 12(b)(6).

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a complaint "must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 734, 234 (3rd Cir. 2007) (citation omitted). Although factual allegations are taken as true, legal conclusions are given no deference—those matters are left for the court to decide. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting the tenet that allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions"). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (quotations and citations omitted).

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718–19 (Fed. Cir. 2014) (Mayer, J., concurring). In those situations, claim construction is not required to conduct a § 101 analysis. *Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").

### 2.  The law of 35 U.S.C. § 101.

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. The law also recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and *abstract ideas*." *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980) (emphasis added). Abstract ideas are ineligible for patent protection because a monopoly over these ideas would preempt their use in all fields. *See Bilski*, 561 U.S. at 611–12. In other words, "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id.* at 653 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). First, the Court must "determine whether the claims at issue are directed to a patent-ineligible concept" such as an abstract idea, law of nature, or natural phenomenon. *Id.* at 2355. Second, if the claims are directed to a patent-ineligible concept, the Court must "consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Id.* (internal quotations omitted).

The first step of the *Alice* inquiry is a "filter" on the claims, determining whether "their character as a whole is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015). In other words, courts look at the "focus" or "basic thrust" of the claims. *See Electric Power Group LLC v. Alston S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016). When evaluating computer-related claims, courts look to whether the claims "improve the functioning of the computer itself," *Alice*, 134 S. Ct. at 2359, or whether "computers are invoked merely as a tool" to implement an abstract process. *Enfish, LLC v. Microsoft Corp.*,

822 F.3d 1327, 1336 (Fed. Cir. 2016). Ideas that could "be **performed by humans without a computer**" are abstract and not eligible for patent protection. *Mortg. Grader, Inc. v. First Choice Loan Servs., Inc.*, 811 F.3d 1314, 1324 (Fed. Cir. 2016) (emphasis added). Moreover, information itself is intangible. *See Electric Power*, 830 F.3d 1350, 1353 (Fed. Cir. 2016). Accordingly, claims are abstract where they are directed to actions such as collecting data, analyzing data, and/or publishing the results of that analysis. *Id.*; *see also TS Patents*, 2017 WL 3838477, at *7.

On this basis, courts have found the following claims directed to various acts of information or data acquisition and transfer (including, among others, acquiring, analyzing, sending, receiving, and publishing data) to be abstract ideas under the *Alice* test:

- Systems and methods for performing **real-time monitoring** of an electric power grid by collecting data from multiple data sources, analyzing the data, and displaying the results, *Electric Power Group*, 830 F.3d at 1351 (emphasis added);

- Claims for **collecting** data, recognizing certain data within the collected set, and storing that data, *Content Extraction and Transmission LLC v. Wells Fargo Bank, National Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (emphasis added);

- Claims directed to **transmitting information** about a mail object over a network using a personalized marking, *Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 908 (Fed. Cir. 2017) (emphasis added);

- Methods for **validating** entry into a transit system involving acquiring identification data from a bankcard, using the data to verify if the bankcard is valid, and denying access to a transit system if the bankcard is invalid, *Smart Sys. Innovations, LLC v. Chicago Transit Authority*, 873 F.3d 1364, 1371–72 (Fed. Cir. 2017) (emphasis added);

- A device used for recording a digital image, storing the digital image, and **transferring** the digital image to a server for further processing, *In re TLI Commc'ns,* 823 F.3d 607, 609 (Fed. Cir. 2016) (emphasis added);

- A method claiming the functional results of converting, **routing**, controlling, monitoring, and accumulating **records**, *Two-Way Media Ltd. v. Comcast Cable Comm'cns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) emphasis added;

- Claims directed to collecting and **analyzing information** to detect misuse, and **notifying** a user when misuse is detected, *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1093–95 (Fed. Cir. 2016) (emphasis added); and

- A device used for recording a digital image, **storing** the digital image, and transferring the digital image to a server for further processing, *In re TLI Commc'ns,* 823 F.3d 607, 609 (Fed. Cir. 2016) (emphasis added).

Step two of the Alice inquiry is a "search for an inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 134 S. Ct. at 2355. The inventive concept must be "significantly more than the abstract idea itself," *id*., "must be more than well-understood, routine, conventional activity," *Mayo*, 132 S. Ct. at 1298, and "cannot simply be an instruction to implement or apply the abstract idea on a computer*," BASCOM Global Internet Services, Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016). *See also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016) (no inventive concept where claim "simply recite[d] the use of generic features of cellular telephones such as a storage medium and a graphical user interface, as well as routine functions, such as transmitting and receiving signals, to implement the underlying idea"). Moreover, claiming the "improved

speed of efficiency inherent with applying the abstract idea on a computer" does not transform an abstract idea into patent-eligible subject matter under Alice. *See Intellectual Ventures I LLC v. Capital One Bank* (USA) ("Capital One Bank"), 792 F.3d 1363, 1367 (Fed. Cir. 2015); *Audatex N. Am., Inc. v. Mitchell Int'l, Inc.*, 703 F. App'x 986, 989 (Fed. Cir. 2017) (adding computer functionality and the use of the Internet to "increase the speed and efficiency of an abstract process" is not enough to show an inventive concept).

**B.  The Asserted Patent is Invalid under 35 U.S.C. § 101**

The claims of the Asserted Patent are invalid under 35 U.S.C. § 101 because they fail both prongs of the *Alice* test. Each of the Asserted Claims is directed to an abstract idea. Abstract ideas are not eligible for patenting. None of the claims contains an "inventive concept sufficient to ensure that the patent in practice amounts to ***significantly more*** than a patent upon the ineligible concept itself." *Alice*, 134 S. Ct. at 2355 (emphasis added). Because the claims of the Asserted Patents are invalid, Aristors has failed to state a claim upon which relief may be granted. Resolving these issues does not require discovery or formal claim construction. Rave respectfully requests that the Court grant its motion and dismiss this case with prejudice. FED. R. CIV. P. 12(b)(6).

**1.  *Alice* Step 1: The Asserted Patent is directed to the abstract idea of providing alarm notifications.**

In determining patent eligibility under § 101, the Court must first determine whether the claims are directed to an abstract idea. *Alice*, 134 S. Ct. at 2355. Under any plausible reading, the claims of the '734 Patent are directed to an unpatentable, abstract idea because they claim nothing more than the "longstanding," "routine," and "conventional" concept of providing alarm notification. *See Alice*, 134 S. Ct. at 2356; *Bilski*, 561 U.S. at 611.

Identified Claim 1 of the '734 Patent is representative of the claims. *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (where

claims are "substantially similar and linked to the same abstract idea," courts may look to representative claims in a § 101 analysis.). Courts analyze the "focus" of the claim, *i.e.*, its "character as a whole," in order to determine whether the claim is directed to an abstract idea. *SAP America, Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018). The "focus" of Claim 1 is providing alarm notifications to emergency personnel and other users:

| Claim Language | Abstract Concept |
|---|---|
| 1. A method of alarm notification, the method comprising: | |
| activating an alert mode of a mobile device based on an emergen situation in an area; | Collecting information |
| transmitting, from the mobile device, an indication of the emergency situation to a communication network control system; | Transmitting information |
| confirming, by the communication network control system, the indication of the emergency situation to the mobile device; | Validating information |
| notifying, by the communication network control system, emergency personnel of the indication of the emergency situation; | Notifying others of information |
| transmitting, by the communication network control system, indication of the emergency situation to one or more additional mobile devices in the area, wherein the one or more additional mobile devices are mobile devices within a predetermined physical range of the emergency situation indicated by the first mobile device; and | Transmitting information |
| transmitting, by the communication network control system, indication of the emergency situation to one or more local alarm devices in the area, the local alarm devices being in the vicinity of the emergency situation | Transmitting information |

The core concept of the '734 Patent is collecting and transmitting information, (*e.g.*, about an emergency), and providing an alarm notification to emergency personnel and other users. Collecting, validating, and transmitting information, as well as notifying users of such information, are abstract ideas. *See Electric Power Group*, 830 F.3d at 1351; *Content Extraction and Transmission LLC*, 776 F.3d at 1347; *Secured Mail Solutions LLC*, 873 F.3d at 908; *Smart Sys. Innovations, LLC*, 873 F.3d at 1371–72; *In re TLI Commc'ns*, 823 F.3d at 609; *Two-Way Media*

*Ltd.*, 874 F.3d at 1337; *FairWarning IP, LLC*, 839 F.3d at 1093–95. Yet these are the concepts behind the '734 Patent.

Furthermore, the claimed concept recites common human activities. *See FairWarning IP, LLC*, 839 F.3d at 1093–95. It is practiced anytime someone sees an emergency, such as a tornado, and notifies others about it.  When a person sees a severe weather event such as a tornado, a person may call the National Weather Service ("NWS") to report there is an emergency (i.e., activating an alert mode of a mobile device based on an emergency situation in an area), and may tell the NWS what the emergency is (*i.e.*, transmitting, from the mobile device, an indication of the emergency situation to a communication network control system). The NWS may then confirm what they heard (*i.e.*, confirming, by the communication network control system, the indication of the emergency situation to the mobile device) and then notify first responders that there is a tornado (i.e. notifying, by the communication network control system, emergency personnel of the indication of the emergency situation). The NWS may also text or alert others in the area about the tornado (*i.e.*, transmitting, by the communication network control system, an indication of the emergency situation to one or more additional mobile devices in the area, wherein the one or more additional mobile devices are mobile devices within a predetermined physical range of the emergency situation indicated by the first mobile device). The NWS may also send information to the appropriate systems to activate sirens or the like (*i.e.*, transmitting, by the communication network control system, an indication of the emergency situation to one or more local alarm devices in the area, the local alarm devices being in the vicinity of the emergency situation). Cell phones merely allow people to perform the above method via an app on their cell phones. This does not confer eligibility. *See Bancorp Servs.*, 687 F.3d at 1277–1278 (explaining that mere automation via computer is insufficient for patent eligibility).

These abstract concepts of collecting, validating, and transmitting information, are "undisputedly well-known" and "humans have always performed these functions." *Content Extraction*, 776 F.3d at 1347; *see also BSG Tech LLC v. AutoZone, Inc.*, No. 2:16-CV-529, 2017 WL 2609066, at 4 (E.D. Tex. Mar. 30, 2017) ("Because the claim can be performed by the human mind or by using pen and paper, the claim is directed to an abstract idea."). Courts have made clear that functions that "could all be performed by humans without a computer," such as those in the Asserted Patent, are abstract under the *Alice* test. *See, e.g., Mortg. Grader*, 811 F.3d at 1324. Indeed, the specifications of the Asserted Patent indicates that the benefit of the purported invention is that it performs the functions faster. See '734 patent at 7:57–62. The fact that a cell phone can perform any of the data collection, transfer, or validation tasks faster or more conveniently than a human does not avoid the conclusion that the claims are directed to patent-ineligible subject matter. *See, e.g., OIP Techs., Inc. v. Amazon.com*, Inc., 788 F.3d 1359, 1363 (Fed. Cir. 2015) ("At best, the claims describe the automation of the fundamental economic concept of offer-based price optimization through the use of generic- computer functions. . . . But relying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible."). In short, the claims "merely implement an old practice in an allegedly new environment," which underscores that the patent claims are directed to an abstract idea. *Fair Warning IP*, 839 F.3d at 1094.

Alternatively, claims are not directed to abstract ideas under step one one of *Alice* where they recite "specific . . . improvement[s] in computer capabilities." *Enfish,* 822 F.3d at 1336. For example, in *Enfish*, the Federal Circuit held the claims were drawn to a "specific improvement to the way computers operate" and patent eligible because the claimed invention resulted in a database with "increased flexibility, faster search times, and smaller memory requirements" than

11

databases in the prior art. *Id.* at 1337; *see also Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d.

improved computer memory system" by "permit[ting] different types of processors to be installed

. . . without significantly compromising their individual performance.").

The Asserted Patent does not disclose any special or improved way of acquiring, storing,

verifying, or transmitting data, and no specific devices are required to perform those tasks. To the

contrary, the patents teach that "the alarm notification process is initiated on a device (such as a

cell phone)" and notifies "other secondary mobile communication devices (such as, for example,

other cell phones, laptops and/or PDAs)." '734 patent at 9:19–20, 26–28. In other words, the focus

of the Asserted Patent is not "on [a] specific asserted improvement in computer capabilities" but

instead "on a process that qualifies as an 'abstract idea' for which computers are invoked merely

as a tool." *Enfish*, 822 F.3d at 1339. The specification is completely devoid of any explanation as

to what constitutes a communication network control system. *See generally id.* The specification

thus confirms that the Asserted Patent is directed to an abstract idea under the first step of the *Alice*

test. *DIRECTV*, 838 F.3d at 1258 (finding claims directed to establishing communication between

two points a "broad and familiar concept concerning information distribution that is untethered to

any specific or concrete way of implementing it").

     **2.** ***Alice* Step 2: The Asserted Patents do not contain an inventive concept sufficient to confer patent eligibility.**

Because the Asserted Patent is directed to an abstract idea, the Court must next determine

whether it contains an "inventive concept sufficient to transform the claimed abstract idea into a

patent eligible application." *Alice*, 134 S. Ct. at 2357. To pass this test, the Asserted Claims "must

include additional features" that "must be more than well-understood, routine, conventional

activity." *Ultramercial*, 772 F.3d at 715. Here, the Asserted Claim is broadly generic and does not

contain meaningful limitations restricting it to a non-routine, specific application of the abstract idea.

Whether the elements of the claim are viewed in isolation or in combination with one another, there is no inventive concept as required by *Alice*, and thus nothing that transforms the abstract idea into patent-eligible subject matter. Simply put, the abstract concept claimed in the Asserted Patent "does not become nonabstract" merely because the claims are set in a "technological environment" consisting of conventional components and the use of standard technology. *Intellectual Ventures I LLC v. Symantec Corp.* ("*IV-Symantec*"), 838 F.3d 1307, 1319 (Fed. Cir. 2016); *see also Alice*, 134 S. Ct. at 2358. The Asserted Claim simply calls for using a mobile device to notify emergency personnel and other users of an emergency condition. Limiting claims to "a particular environment — a mobile telephone system — . . . does not make the claims any less abstract*." In re TLI Commc'ns*, 823 F.3d at 613. Moreover, any purported improvements in speed or efficiency inherent with applying the abstract idea automatically or on a mobile device are not sufficient to establish an inventive concept that transforms the abstract idea into patentable subject matter. *Capital One Bank*, 792 F.3d at 1367; *see also OIP Techs.*, 788 F.3d at 1363 (claims directed to "automat[ing] or otherwise mak[ing] more efficient traditional price-optimization methods" were abstract); *MySpace, Inc. v. GraphOn Corp.*, 672 F.3d 1250, 1267 (Fed. Cir. 2012) ("While running a particular process on a computer undeniably improves efficiency and accuracy, cloaking an otherwise abstract idea in the guise of a computer-implemented claim is insufficient to bring it within section 101."). Any suggestion that the Asserted Patent passes muster under *Alice* because they are purportedly directed to "automatic" or "real-time" acquisition of information is without merit. *See, e.g.*, *Electric Power Group*, 830 F.3d at 1351.

Courts have repeatedly held that the presence of generic hardware and processing like the kind recited in the Asserted Claim does not make an otherwise abstract idea patent eligible. *DIRECTV*, 838 F.3d at 1262 (finding no inventive concept where the claim "simply recite[d] the use of generic features of cellular telephones, such as a storage medium and a graphical user interface, as well as routine functions, such as transmitting and receiving signals, to implement the underlying idea"); *Elec. Power Grp*., 830 F.3d at 1355–56 ("We have repeatedly held that such invocations of computers and networks that are not even arguably inventive are insufficient to past the test of an inventive concept in the application of an abstract idea"); *In re TLI Commc'ns LLC Patent Litigation*, 823 F.3d at 612. In *Intellectual Ventures I*, the patentees claimed an "interactive interface," described as "software," but failed to show how it was anything more than a "generic computer element." *Intellectual Ventures I*, 792 F.3d at 1370. This Court stated that "[t]he improved speed or efficiency inherent with applying an abstract idea on a computer does not provide an inventive concept" and thus fails *Alice* Step 2. *Personalized Media Commc'ns, LLC v. Amazon.com, Inc.*, 161 F. Supp. 3d 325, 338 (D. Del. 2015) (Andrews, J.). Here, the Asserted Claims are directed to the general functions of collecting, validating, and transmitting information, as well as notifying users of such information and storing data. All of the recited components and technology in the claims to perform these functions were well-known in the art, and the specification does not even attempt to describe them as new. For example, the Asserted Claim refers to "a mobile device" that is used to collect and transmit data, and sending an alarm notification to "additional mobile devices" and "local alarm devices." *See e.g.* '794 patent at 20:8–32. But these are all nothing more than "generic and well-known components." *OpenTV*, 2016 WL 344845, at *7.

Furthermore, an inventive concept sufficient to confer patent eligibility is present where "components operate in an unconventional manner to achieve an improvement in computer functionality." *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300–01 (Fed. Cir. 2016). The claims at issue in *Amdocs* contained an inventive concept because they disclosed a unique architecture for a network, which "allow[ed] data to reside close to the information sources, thereby reducing congestion in network bottlenecks, while still allowing data to be accessible from a central location." *Id.* at 1291–92. "[T]his distributed enhancement was a critical advancement over the prior art" that "stored information in one location, which made it very difficult to keep up with massive record flows from the network devices and which required huge databases." *Id.* at 1300, 1292. Thus, the claims included an inventive concept and were patentable because they provided "an unconventional technological solution (enhancing data in a distributed fashion) to a technological problem (massive record flows which previously required massive databases)." *Id.* at 1300. However, no such unconventional technological solution is present here.

Nor can there be any argument that the purported novelty of the combination or sequence of steps in the claims of the Asserted Patents resolves the deficiencies under Section 101. *Synopsis, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016) ("a claim for a *new* abstract idea is still an abstract idea") (emphasis in original); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) ("We do not agree with *Ultramercial* that the addition of merely novel or non-routine components to the claimed idea necessarily turns an abstraction into something concrete"); *SkillSurvey, Inc. v. Checkster LLC*, 178 F. Supp. 3d 247, 260 (E.D. Pa. 2016) ("A novel combination of steps alone cannot alone render an abstract idea patentable."), *aff'd*, 683 F. App'x 930 (Fed. Cir. 2017). This is because a novel sequence of steps still results in only a "grouping of conventional steps and extant technology." *Smart Sys. Innovations, LLC v. Chicago Transit*

15

*Authority.*, No. 14-cv 08053, 2015 WL 4184486, at \*6 (N.D. Ill. July 10, 2015); *see also In re: Bill of Lading Transmission & Processing Sys. Patent Litig.,* No. 1:09-MD-2050, 2016 WL 4505767, at \*3 (S.D. Ohio Aug. 29, 2016) ("But there is nothing 'inventive' about shifting the timing of the data collection process – indeed, it seems a matter of common sense. This is all the more true when, as already stated, the execution of the method depends entirely on the conventional operation of commercially-available technology."). Since the method recites only conventional steps using known technology, neither the combination nor sequence of steps can save the Asserted Claim from patent ineligibility.

All claims of the Asserted Patent fail both prongs of *Alice* and are ineligible.

## V.  CONCLUSION

For the foregoing reasons, Rave respectfully requests that the Court dismiss Aristors Licensing's Complaint for failure to state a claim upon which relief can be granted. Rave requests dismissal with prejudice because leave to amend would be futile.

Dated:  February 24, 2020

Respectfully submitted,

FISH & RICHARDSON P.C.


By: */s/ Jeremy D. Anderson*
    Jeremy D. Anderson (#4515)
    222 Delaware Ave., 17th Floor
    P.O. Box 1114
    Wilmington, DE 19801
    (302) 652-5070 (Telephone)
    (302) 652-0607 (Facsimile)
    janderson@fr.com

    Neil J. McNabnay
    Ricardo J. Bonilla
    Noel F. Chakkalakal
    1717 Main Street, Suite 5000
    Dallas, TX 75201
    (214) 747-5070 (Telephone)
    (214) 747-2091 (Facsimile)
    mcnabnay@fr.com
    rbonilla@fr.com
    chakkalakal@fr.com

    **ATTORNEYS FOR DEFENDANT**
    **RAVE MOBILE SAFETY HOLDINGS, LLC**